OPINION
Appellants, Vanessa Roark and Joseph Baker, Sr., appeal the decision of the Brown County Court of Common Pleas, Juvenile Division, granting to Brown County Department of Human Services ("DHS") permanent custody of Joseph Baker, Jr. and Tyler Scott Roark.
Vanessa is the mother of Joseph Jr. and Tyler. Joseph Sr. is Joseph Jr.'s father. Tyler's father, Troy Calvin Hampton, had no involvement in the instant case. Tyler was born on July 8, 1992, and Joseph Jr. was born on April 25, 1997.
DHS's first contact with Vanessa concerning the children occurred on April 8, 1997. There were two previous attempts to contact Vanessa, but no one was home at those times. There had been a complaint alleging that Tyler was neglected and unsupervised. At the time of the complaint, DHS already had a documented history of Tyler being left in unsupervised circumstances. Reports of Tyler being found away from home dated back to mid-1995. There was also one complaint of abuse filed as the result of Vanessa hitting Tyler with a belt causing welts on his back and stomach.
Shari Ruttencutter was the caseworker who made the April 1997 contact with Vanessa. When Ruttencutter arrived at Vanessa's home, she saw Tyler in the back yard sitting on a swing smoking a cigarette. Tyler ran up to Ruttencutter's car and asked her who she was. When Ruttencutter entered the house with Tyler, Vanessa was inside sleeping. When Vanessa was awakened, she became agitated and yelled at Tyler, telling him that she was going to "bust his fucking ass." Ruttencutter removed Tyler and he was placed in the temporary care of DHS. Tyler was adjudicated a neglected and dependent child, and a case plan was established to reunite Vanessa and Tyler.
On August 13, 1997, DHS received a complaint regarding Joseph Jr., then four months old. Two days prior, Joseph Sr. had taken the boy to the hospital where a blood test showed that Vanessa was not giving Joseph Jr. the medication prescribed for him at birth to treat hypothyroidism. Joseph Jr. was removed from Vanessa's home, and he was placed in his father's temporary custody in February 1998. Although Joseph Sr. appeared to be providing adequate care to Joseph, Jr., he severely beat his live-in girlfriend, inflicting numerous injuries. This raised concerns about Joseph Sr.'s ability to control his anger and domestic violence, prompting DHS to remove Joseph Jr. A case plan was established to reunite the child with his parents. DHS was given custody of Joseph Jr. in March 1998.
Both children were placed in foster care pending Vanessa and Joseph Sr.'s completion of case plans. Among other things, Vanessa was directed to attend parenting classes and counseling. Vanessa failed to complete the parenting classes, and the classes she did attend were not attended in the proper order. She did not keep a number of appointments in another parenting program. She also missed some visitations with Tyler. As time progressed, concerns remained about Vanessa's inability or unwillingness to supervise Tyler.
Joseph Sr. was directed to attend parenting and anger management classes and undergo counseling. He was also required to find suitable permanent housing and provide a safe and stable environment for Joseph Jr. Although Joseph Sr. completed the parenting classes, he showed no indication that he would utilize proper parenting methods. A psychological evaluation of Joseph Sr. focused upon his inability to respond positively to Joseph Jr.'s emotional needs. There were lingering concerns that Joseph Sr. would be increasingly intimidating and aggressive as Joseph Jr. grew and became more assertive.
There were also some observed visitations that demonstrated less than positive interaction between the children and their parents. Aggressive behavior was involved in these visitations, including one incident in which Joseph Jr. and another young sibling became involved in a fight. Neither Vanessa nor Joseph Sr. demonstrated that they could successfully use the educational information and skills provided them. In the opinion of DHS's evaluators, the conditions which led to the children's removal were still present. By this time, Tyler had been in DHS's custody for about two years, and Joseph Jr. for more than one year.
Throughout this period, there were numerous hearings on Vanessa's and Joseph Sr.'s progress in the case plans. On January 21, 1998, DHS filed a motion for permanent custody of Tyler. DHS filed a similar motion as to Joseph Jr. on October 8, 1998. A permanent custody hearing on the motions was held in June 1999. Prior to the conclusion of testimony, Vanessa, Joseph Sr., and their respective counsels excused themselves from the courtroom. DHS then presented two experts and a caseworker as witnesses. The court then recessed, and proceedings were reconvened on October 26, 1999. At that time, one of the experts and the caseworker were again presented as witnesses and cross-examined. On January 28, 2000, the trial court filed its entry granting to DHS permanent custody of both children. Vanessa and Joseph Sr. separately appeal.
Vanessa's Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY ALLOWING TESTIMONY TO BE PRESENTED TO THE COURT DURING THE PERMANENT CUSTODY HEARING THAT WAS NOT SUBJECTED TO CROSS-EXAMINATION DUE TO THE VOLUNTARY ABSENCE OF COUNSEL FOR THE MOTHER AND THE FATHER.
In her first assignment of error, Vanessa contends that the trial court erred when it allowed testimony to continue after she and her counsel voluntarily left the courtroom. She makes the same argument on behalf of Joseph Sr. even though he chose to not raise this argument in his own appeal. Because Vanessa can enforce only her rights, and not those of Joseph Sr., we will discuss the issue only as it relates to Vanessa.
It has previously been determined that the Ohio Constitution "gives a criminal defendant the right to confront and cross-examine witnesses against him, but it does not afford such rights to a parent in a permanent custody hearing." In re Fitzgerald (Jan. 28, 1998), Summit App. No. 18508 and 18475, unreported, 1998 WL 46767, at *5, quoting In reStarkey (Apr. 3, 1996), Summit App. No. 17423, unreported, 1996 WL 148656, at *2. Even if such a right was granted, a party could still choose to voluntarily waive that right. In any case, even where allowing testimony to be presented without the aid of cross-examination might be error, such error does not prejudice a party that invites the alleged error. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." State ex rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467, 471, citing State ex rel. Fuqua v. Alexander (1997),79 Ohio St.3d 206, 208.
During the initial permanent custody hearing, Vanessa and her counsel left the courtroom with Vanessa's permission. Counsel made the trial court aware of Vanessa's consent to leaving, indicating to the trial court that testimony could continue:
 Tresa Gossett [Prosecutor]: Your Honor prior to me calling the next witness it is my understanding from conversations from counsel that they have an issue to bring before the Court prior to proceeding with the next witness.
 The Court: Okay.
 Bruce S. Wallace [Vanessa's Counsel]: Your Honor it's my understanding that the State will be going forward since Mr. Hampton is not present and can't sign any waiver or surrender they have to go forward with certain testimony relating to the child or children and at least make a case for Mr. Hampton since my client has indicated and has started the counseling process and has indicated her desire to execute the permanent surrender we would ask the Court for leave to excuse ourselves from the Courtroom, both Vanessa and I, it's also my understanding that the 2 foster parents of the children are on their way here and that when they arrive they will meet with Children Services representatives to make sure that they are willing to meet with Vanessa and Joe and if they are which I'm assuming they will be, we hopefully will have a chance for Vanessa and Joe to talk to the foster parents this afternoon before they leave the building.
 The Court: So you would like to be excused at this point?
Bruce S. Wallace: That is correct and I have,
 The Court: You don't have any specific cross examination for this witness that you would like?
 Bruce S. Wallace: No Your Honor. And it's my understanding that the only reason they are basically going forward is because they have to with regard to Mr. Hampton because he's not here to sign a waiver and they have to present certain evidence regarding the child in order to justify the Court finding regarding Mr. Hampton who is not here.
 The Court: Okay.
 Nick Ring [Joseph Sr.'s Counsel]: Also Your Honor my client has gone through the counseling with Mrs. Cahall this morning and any testimony that these 2 witnesses would be speaking about would be in regards to Mr. Hampton's child which obviously is not my client's child and as such we would ask that we be excused from the Courtroom during that testimony as well.
 The Court: Any objections?
 Tresa Gossett: Your Honor both of the parents have completed the counseling with Geri Cahall and it's my understanding the documents have been signed and witnesses [sic] appropriately, counsel has been provided with the opportunity to be here for the testimony of Dr. Zarnowiecki and Dr. Reyrosa and they have indicated they have no desire to do so and if they are aware of the testimony and the exhibits which would include medical records and her report, the doctor's reports that have been placed in the record, the State of Ohio will not insist that they be here for that purpose.
 The Court: No objection by the guardian ad litem is there?
Edward L. Harp: No.
The Court: Then you may be excused if that is your desire.
 Nick Ring: For the record Judge, Joe I [sic] have explained to you this earlier and you understand exactly what is going on at this point and time now don't you?
 Joe Baker: Yes I do.
 Nick Ring: And is it your desire to leave the Courtroom is that correct:
 Joe Baker: Yes.
 Bruce S. Wallace: And Your Honor for the record with Vanessa, Vanessa you've heard my statements in Court regarding our request to leave the Courtroom you understand the procedure that's going on?
 Vanessa Roark: Yes I do.
Bruce S. Wallace: And you're in agreement with that request?
Vanessa Roark: Correct.
Bruce S. Wallace: Thank you Your Honor.
The Court: They may be excused if that is their desire.
The prosecutor clearly stated that the expert witnesses, Drs. Susan Zarnowiecki and Alvaro Reyrosa, and the social worker, Rowena Mitchell, would be testifying regarding the information in their reports. These reports, in part, concerned Vanessa. Vanessa's counsel made clear that he and Vanessa understood what the expert's testimony would be, but there was no need to cross-examine them at that time because of other arrangements being made as to Vanessa's counseling and meeting with the foster parents. Vanessa confirmed on the record that she consented to being excused from the hearing.
It was not error for the trial court to continue testimony after Vanessa indicated that she had no problem with the testimony continuing. She and her counsel had all the necessary information to determine whether cross-examination might be necessary. Her failure to judge the importance of that testimony cannot be imputed to the trial court as error. Even if any error occurred, it occurred at the behest and consent of Vanessa. Where she was the cause of such alleged error she cannot claim to have been harmed by it. State ex rel. The V Cos., 81 Ohio St.3d 471.
It should be noted that Vanessa was given opportunity to cross-examine Mitchell and Dr. Reyrosa in the later permanent custody hearing where both again testified. If it had been necessary to cross-examine Dr. Zarnowiecki, Vanessa could have called her as a witness at this later hearing. Any detriment caused to Vanessa's case by her failure to cross-examine these witnesses at the earlier hearing arose from her own decisions, and she had the opportunity to alleviate any such detriment at the later hearing.
The trial court did not err by continuing testimony after Vanessa voluntarily chose to be excused from the first permanent custody hearing. Vanessa's first assignment of error is overruled.
Vanessa's Assignment of Error No. 2 and Joseph Sr.'s Assignment of Error read as follows:
 THE TRIAL COURT LACKED SUFFICIENT EVIDENCE TO GRANT PERMANENT CUSTODY OF THE CHILDREN OF THE APPELLANT TO THE AGENCY.
In their identical assignments of error, Vanessa and Joseph Sr. contend that the trial court was not presented clear and convincing evidence that granting permanent custody of the children to DHS was in the children's best interest. They assert that the trial court failed to support its decision with the proper statutory findings.
R.C. 2151.414(B)(1) provides:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Clear and convincing evidence is evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court deviated from the statutory criteria. See In re William S. (1996),75 Ohio St.3d 95, 99. The trial court is not required to use the specific statutory language or to explicitly refer to specific statutory provisions. Rather, the trial court must "find, by clear and convincing evidence, that certain statutory criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts." In re Brown (1994),98 Ohio App.3d 337, 343. See, also, In re Hart (Mar. 9, 1993), Marion App. No. 9992-47, unreported.
In determining the best interest of a child, R.C. 2151.414(D) provides that the trial court must consider all relevant factors including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child, or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
With respect to the determination of whether a child cannot be placed with either parent within a reasonable time, or should not be placed with his parents, the factors to be considered include the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
* * *
(16) Any other factor the court considers relevant.
R.C. 2151.414(E). When making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the R.C. 2151.414(E) factors are present, the trial court must find that the child cannot or should not be placed with the parent. See William S.,75 Ohio St.3d at 98.
In the instant case, the trial court made the following determinations:
 The Court finds by clear and convincing evidence that the children cannot be placed with either parent within a reasonable time and that the children should not be placed with either parent; that the children's continued residence or return to the home would be contrary to the children's best interests and welfare; and that it is in the best interest of the children to permanently commit the children to Brown County Department of Human Services.
 The Court further finds that reasonable efforts were made to prevent the need for placement and or make it possible for the children to return home. The Court finds that the psychological makeup of the parents prevents the formulation of a course of treatment that would permit the return of the children in a reasonable time. The past history of neglect and dependency cannot be ignored as a factor in determining whether the children should ever be placed with either parent.
The record supports these findings of the trial court. The children had both been in the custody of DHS for over fourteen months at the time of the first permanent custody hearing. Vanessa had a demonstrated history of failing to supervise or provide medication to the children. Even though DHS developed a case plan to help reunite her with Tyler and Joseph Jr., she failed to abide by this case plan in full. She was either unable or unwilling to put the parenting skills taught her to use with the children. Thus, it was clear the children could not or should not be placed with Vanessa within a reasonable period of time.
Likewise, the same was true as to Joseph Sr. He had a demonstrated history of anger management problems. Evaluations done in the course of the case plan showed that these anger management concerns remained. In fact, it was felt that he may pose some threat to Joseph Jr. in the future, when Joseph Jr. was older and more assertive. Like Vanessa, Joseph Sr. showed little ability or willingness to utilize the parenting skills he should have learned in the course of the case plan. As aptly stated by the trial court, "the psychological makeup of the parents prevents the formulation of a course of treatment that would permit the return of the children in a reasonable time."
The trial court found it was in the children's best interest to place them in DHS's permanent custody. In light of the supported findings that the children would be unsupervised or not properly cared for by their parents, this conclusion was not in error. Because custody cannot be returned to either parent in a reasonable time, it was in the children's best interest to be placed with DHS. Vanessa's second assignment of error and Joseph Sr.'s first assignment of error are overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.